UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CHRISTOPHER JOZEFYK,

       Plaintiff,

v.                                                                               Case No. 16-C-1361

NANCY A. BERRYHILL,

       Defendant.

---

## DECISION AND ORDER

---

This is an action for judicial review of a decision by the Commissioner of Social Security denying Plaintiff Christopher Jozefyk's applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jozefyk contends that the decision is not supported by substantial evidence. In particular, he asserts that the Administrative Law Judge (ALJ) failed to obtain a valid waiver of his statutory right to counsel, to adequately develop the record, and to account for his moderate difficulties maintaining concentration, persistence, and pace in formulating his residual functional capacity (RFC). For the reasons set forth below, the decision of the Commissioner will be affirmed.

## BACKGROUND

Jozefyk filed an application for a period of disability and disability insurance benefits on January 10, 2013, and an application for supplemental security income on December 5, 2012. R. 105, 141. Both applications alleged that he has been disabled since December 31, 2011. *Id.* In the Disability Report filed in support of his application, Jozefyk listed the following physical or mental impairments that he claimed limited his ability to work: "1. spinal injury, mental illnesses, vision

impairment; 2. diabetes; 3. back injury herniated discs in neck; 4. myopia and cataracts; 5. [d]epression; 6. astigmatism; 7. visually impaired; 8. head injury with permanent damage physical & mental; 9. overlapped toes foot problems; 10. [f]lat feet and pes planus with ankles giving way; and 11. [h]istory of liver function failure." R. 246. At the time of his applications, Jozefyk was 32 years old and lived with his mother and step-father in Niagara, Wisconsin. R. 149. He has not worked since December 2011, and before that he worked various jobs as a security guard and in retail settings. R. 85–88.

Jozefyk's applications were denied both initially on June 6, 2013, and on reconsideration on October 4, 2013. R. 120, 137, 157, 174. He requested a hearing before an ALJ, and ALJ MaryAnn Lunderman held a hearing on March 23, 2015. R. 80, 188. At the hearing, Jozefyk appeared without counsel and testified on his own behalf, and the ALJ also heard testimony from Vocational Expert (VE) Allen Noll. R. 80–81.

At the hearing, Jozefyk testified that he was 5' 6" in height and weighed 250 pounds. He was a high school graduate and last worked in December 2011. R. 85. Jozefyk testified that he was no longer looking for work because he had "really bad anxiety and depression." *Id.* His last job had been as a security guard for a private gated community in Florida which he had held for three and a half years. He left that employment when the company he worked for lost the contract with the community where he had been working and placed him at a new location that was too far from his home. R. 86. Jozefyk testified that before that he worked for three months at a gas station as a cashier but also did janitorial work and other tasks that were required. Prior to that job, he worked as a security guard for three other companies. He was terminated from the first after three or four months because a supervisor did not like him, from the second because the company lost its contract,

2

and the other due to a change in management. Prior to that, he worked six years at a retail store as a cashier and doing customer assistance. R. 86–88.

Expanding on why he was unable to work, Jozefyk testified:

> I have severe depression, anxiety. I have memory problems, I forget things a lot. I have, I have pain everywhere, every day. I get migraines frequently. I have, I have a foot problem where I can't stand or walk for too long and also I have a knee problem, where my knee goes out on me a lot. I have back pain every day, spasms probably twice a week. And that's about it.

R. 88.

Although he was still current on his license, Jozefyk testified that he could no longer work as a security guard because "I can't stand or sit for too long because of my knee and my foot." R. 90. He testified he could lift only ten pounds without hurting himself, sit for a couple of hours at a time, stand for a half hour, and walk a quarter mile. He spent his days on his computer, either on Facebook or other sites, or watching TV. He did housework when he had to, but washing dishes bothered his back after a while and he would sometimes drop dishes because he had weakness, trembling, and pain in his hands. He could also do laundry and vacuum, but everything he did hurt his back. He also cared for his mother's two cats. R. 90–91.

Following Jozefyk's testimony, the ALJ examined the VE. In the course of questioning the VE, the ALJ posed the following hypothetical:

> Let's assume a hypothetical individual who is the same age with the same vocational and educational background as the claimant. Assume further, the hypothetical individual is limited to medium work and the hypothetical individual is further limited to simple, routine, repetitive tasks . . . requiring no more than occasional contact with supervisors and coworkers, no contact with the public, but no supervisor or coworker should be situated in close proximity to the assigned work area, and by that, within 10 to 15 feet.

R. 94. In response to questions that followed, the VE testified that the hypothetical individual would not be able to perform Jozefyk's past relevant work as a security guard or cashier, but would be able to find work in the national economy as a floor waxer, dishwasher/kitchen helper, or machine operator. R. 94–96. The ALJ adjusted the hypothetical, reducing the exertional level to light, and the VE testified that the altered hypothetical person could find jobs in the national economy as a packager or hand packager, a bagger, or a projection molding machine tender. R. 96–97. The ALJ further adjusted the hypothetical, reducing the exertional level to sedentary, and the VE testified that there would be a small number of jobs in the national economy available to the hypothetical person as a surveillance system monitor, dowel inspector, and press operator. R. 98–99.

In an eighteen page decision dated May 15, 2015, the ALJ determined that Jozefyk is not disabled. R. 14–31. The ALJ's decision followed the five-step sequential process for determining disability prescribed by the Social Security Administration (SSA). R. 15–16. At step one, the ALJ concluded that Jozefyk met the insured status requirements through December 31, 2016, and that he has not engaged in substantial gainful activity since December 31, 2011, the onset date of his alleged disability. R. 16. At step two, the ALJ concluded that notwithstanding the numerous physical and mental impairments listed in his Disability Report, Jozefyk had only four severe impairments: lumbar strain, obesity, degenerative changes in the cervical spine, and affective and anxiety disorders. R. 22. At step three, the ALJ concluded that Jozefyk did not have an impairment or combination of impairments that met or medically equaled the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 16–17. Specifically, the ALJ considered listings 1.04 (disorders of the spine), 12.04 (affective disorders), and 12.06 (anxiety-related disorders) and determined that Jozefyk did not have a sufficient combination of marked impairments and repeated

episodes of decompensation to satisfy the "paragraph B" criteria for any of those listings. R. 17–19. Nor did the evidence support the existence of any listing's "paragraph C" criteria. The ALJ also considered the severity of Jozefyk's obesity under Social Security Ruling 02-1p. R. 17–18.

Before turning to steps four and five, the ALJ determined Jozefyk's RFC. With respect to Jozefyk's physical impairments, the ALJ found that there was no objective evidence to support impairment to his low back, even though his physicians had acknowledged a lumber component to his alleged back pain. The evidence supporting impairment of the cervical spine showed mild paracentral disc protrusion at C5-6 with very early central disc protrusion at C6-7. R. 20. Despite this minimal evidence, "[i]n the spirit of generosity and in light of the objective medical evidence," the ALJ found that "the claimant suffers from degenerative disc changes in the cervical spine and a lumbar strain." R. 21. With respect to the severity and extent of the chronic pain Jozefyk attributed to his physical impairments, however, the ALJ was less generous. He found that Jozefyk's testimony and other statements concerning the intensity, persistence, and limiting effects of his impairments were not credible:

> If the pain was truly as severe and as limiting as claimed, it would be reasonable to expect to see more aggressive and consistent pain management. Here, the evidence shows the claimant did not start using pain medication until shortly before the administrative hearing, and as Dr. Tan noted, he has never had chiropratic care, physical therapy, or cortisone injections. Thus, I do not find the allegations of severe and chronic pain to be fully credible.

*Id.* The ALJ found no medical evidence to support Jozefyk's assertion that his other alleged physical impairments created any functional limitations. R. 21–23. The significant discrepancies between the evidence and Jozefyk's function reports, the statements he made to a consultative physician, and his testimony at the hearing, the ALJ noted, "raise concerns about the credibility of the claimant's

5

allegations, particularly since there is no evidence of a worsening in the impairments during that time." R. 23–24. Based on the evidence of record, the ALJ found that Jozefyk had "the physical residual functional capacity to perform medium work secondary to pain and mildly diminished range of motion in his back in combination with the exacerbating effect of obesity." R. 24.

As to mental impairments, although Jozefyk had "a very limited history of mental health treatment during the period at issue," the ALJ found that "the evidence supports a finding of affective and anxiety disorders." *Id.* Based on this finding, the ALJ added to the RFC of medium work the following limitation:

> [W]ork as assigned is limited to simple and repetitive tasks requiring no contact with the public and only occasional contact with supervisors and coworkers but with neither coworkers or supervisors located in close proximity to the assigned work station, specifically no closer than 10 to 15 feet.

R. 19.

Based on this RFC finding, the ALJ determined at step four that Jozefyk is not capable of performing his past relevant work as a cashier or security guard. R. 27–28. But considering Jozefyk's age, education, work experience, and RFC, the ALJ found that Jozefyk is capable of performing jobs that exist in significant numbers in the national economy. R. 28. The ALJ relied upon the VE's testimony at the hearing that jobs exist for a person of Jozefyk's age, experience, education, and RFC at the medium, light, and sedentary exertional levels. R. 29–30. Because the availability of such work options meant that Jozefyk would be capable of making an adjustment to other work, the ALJ therefore found that he is not disabled. R. 30. Jozefyk sought review by the Appeals Council, which denied his request. R. 1–10. He thereafter sought review in this court.

**LEGAL STANDARD**

The statute authorizing judicial review of decisions of the Commissioner of Social Security states that the findings of the Commissioner "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales*, 404 U.S. 389, 401 (1971)). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and her conclusion. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

**ANALYSIS**

Jozefyk does not challenge the ALJ's findings concerning his credibility, his alleged physical impairments, or his physical RFC. Instead, he argues that the ALJ committed three errors: (1) the ALJ did not obtain an effective waiver of Jozefyk's statutory right to counsel, (2) the ALJ failed to

adequately develop the record, and (3) the hypothetical that the ALJ posed to the VE failed to adequately incorporate the moderate limitations on concentration, persistence, and pace that the ALJ found as part of the RFC determination. The court will address each claim of error in turn.

**A. Waiver of the Statutory Right to Counsel**

Jozefyk first argues that the ALJ did not obtain a valid waiver of his right to counsel before allowing him to proceed pro se at the hearing. Social Security claimants have "a statutory right to counsel at disability hearings." *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991). Although a claimant may waive that statutory right, the Seventh Circuit has held that a waiver will be valid only if the claimant is advised of "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007) (quoting *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994)). If the ALJ does not obtain a valid waiver of the claimant's right to counsel, the matter must be remanded for a new hearing unless the Commissioner can establish "that the ALJ fully and fairly developed the record." *Binion*, 13 F.3d at 245.

As soon as the hearing began, the ALJ discussed with Jozefyk his right to be represented by counsel:

ALJ: . . . You are here today without an attorney or a representative.

[Jozefyk]: Yes.

ALJ: Is that correct?

[Jozefyk]: Correct.

ALJ: Are you aware you have the right to counsel—

8

> [Jozefyk]: Yes
>
> ALJ: —is [sic] this hearing or representation?
>
> [Jozefyk]: Yes.
>
> ALJ: Have you done anything about trying to find someone to represent you?
>
> [Jozefyk]: I have.
>
> ALJ: And what have you done?
>
> [Jozefyk]: I've contacted a few local lawyers here in Green Bay and also one up where I live and none of them would take my case.
>
> ALJ: So, what have you decided to do?
>
> [Jozefyk]: Do it by myself, I guess.
>
> ALJ: This case has not been continued so if you need more time to try to find counsel, I can provide that to you. Otherwise we can go ahead and proceed—without counsel if that's what you would like to do, or representation.
>
> [Jozefyk]: Yeah, proceed.

R. 82–83. From there, the ALJ continued the hearing and proceeded to question Jozefyk about his previous employments and alleged impairments.

As the colloquy between Jozefyk and the ALJ quoted above shows, the ALJ reminded him of his right to counsel before the hearing and offered a continuance to allow him more time to obtain an attorney. Despite this reminder and offer from the ALJ, Jozefyk explained that he had contacted multiple lawyers in Green Bay, all of whom had declined to take his case, and he therefore elected to proceed at the hearing without counsel. From this colloquy, there is no dispute that the ALJ did not personally explain the advantages of counsel or Jozefyk's payment options at the hearing.

9

The Commissioner asserts, however, the Jozefyk received notice of his right to counsel that complied with all statutory and regulatory requirements. Under 42 U.S.C. § 406(c),

> The Commissioner of Social Security shall notify each claimant in writing, together with the notice to such claimant of an adverse determination, of the options for obtaining attorneys to represent individuals in presenting their cases before the Commissioner of Social Security. Such notification shall also advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge.

*See also* 42 U.S.C. § 1383(d)(2)(D); 20 C.F.R. §§ 404.1706, 416.1506. The notice of hearing that the SSA sent to Jozefyk included a section informing him of his right to obtain representation, as well as the availability of contingent fee arrangements. R. 196. With that notice of hearing, Jozefyk also received a form entitled "Your Right to Representation," which reiterated his right to obtain representation and the advantages of having an attorney, explained in greater detail the availability of contingent fee arrangements, and informed him that an attorney may generally charge no more than 25% of any past-due benefits secured through an appeal to federal court. R. 201–02. The ability to obtain free legal advice and the possibility of retaining a lawyer on a contingency fee basis with any fee subject to the limitation of 25% of past due benefits and court approval is also explained in other documents that were sent to him. R. 176, 182. Jozefyk counters that, despite receiving this written notice, his decision to proceed at the hearing without an attorney was not the product of a valid waiver. Implicitly, he seems to contend that the ALJ must personally explain to the claimant the benefits of obtaining counsel, the 25% withholding limitation on attorney's fees, and the availability of free counsel or a contingent fee arrangement. ECF No. 11 at 9–10; ECF No. 18 at 2.

In *Skinner v. Astrue*, the Seventh Circuit held that a written notice sent to the claimant did not support a finding that she waived her right to have an attorney represent her because, as the

10

Commissioner conceded, the notice in that case did not comport with the circuit's requirements for establishing a valid waiver. 478 F.3d 836, 841 (7th Cir. 2007). Here, however, there is no dispute that the Agency's "Your Right to Representation" pamphlet contains all of the information required. Nor is there any real issue as to whether Jozefyk received it. The pamphlet was attached to the Notice of Hearing that advised him of the date and place of the hearing. Since he appeared at the time and place of the hearing, it is safe to assume he received the notice and the attached pamphlet, and Jozefyk does not claim otherwise.

The only question remaining as to this issue is whether the ALJ is required to repeat the same information at the hearing in order to obtain a valid waiver. I have previously concluded that the ALJ need not do so. *Juza v. Berryhill*, No. 17-C-439, 2018 WL 1010209, at *4–5 (E.D. Wis. Feb. 21, 2018). Other district courts in this circuit have reached the same conclusion. *See Smith v. Astrue*, 795 F. Supp. 2d 748, 758–59 (N.D. Ill. 2011), *rev'd on other grounds*, 467 F. App'x 507 (2012); *see also Hill v. Berryhill*, No. 1:16-CV-523, 2017 WL 1028150, at *3–4 (N.D. Ill. Mar. 16, 2017); *Crull v. Colvin*, No. 2:13-CV-322-JEM, 2015 WL 1128871, at *11 (N.D. Ind. Mar. 11, 2015). Though the Seventh Circuit has not found a valid waiver of a claimant's statutory right to attorney representation based on a pre-hearing written disclosure, *Skinner* at least suggests that such a wavier could occur.

In *Skinner* the court rejected the argument that the ALJ had failed to obtain a valid waiver of the claimant's right to appear in person at the hearing when the ALJ failed to provide "a proper explanation of the significance of appearing in person at an oral hearing and the possible consequences of waiving her personal appearance and allowing the case to be decided on the written record." 478 F.3d at 842. The court held that the waiver form the claimant signed prior to the

11

hearing properly informed her of the benefits of appearing personally at the hearing and no further explanation by the ALJ was required. *Id.* at 843.

The same reasoning applies here. Jozefyk received the pamphlet "Your Right To Representation," which explains a claimant's right to legal representation, the limits on the fee an attorney can charge, the benefits of having such representation, and how to obtain it. R. 201–02. It is clear from the record that Jozefyk did not have an attorney representing him not because he did not know that he had a right to have legal representation or did not appreciate the benefit of having such representation, but because the lawyers he contacted wouldn't take his case. Though offered more time to try to find an attorney, Jozefyk elected to proceed without counsel. This response, considered in conjunction with his receipt of the written notice of his statutory rights, is enough to show a valid waiver.

**B. Development of the Record**

"A well-settled proposition regarding social security disability hearings is that '[i]t is a basic obligation of the ALJ to develop a full and fair record.'" *Thompson*, 933 F.2d at 585 (quoting *Smith v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 857, 860 (7th Cir.1978)); *see also Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) ("Although a claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record."). This obligation exists even where the claimant is represented by counsel, but rises to a special duty for unrepresented claimants unfamiliar with the hearing process. *Id.* at 586 (citing *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984)). "The ALJ's duty to develop the record fully and fairly where the claimant proceeds without counsel is met if the ALJ probes the claimant for possible disabilities and uncovers all of the relevant evidence." *Binion*, 13 F.3d at 245.

Where, as here, a claimant has waived his right to have an attorney represent him, the burden is on the claimant to show that the ALJ failed to fulfill this duty. *Id.* A significant omission is usually required before the court will find that the Secretary failed to assist pro se claimants in developing the record fully and fairly. *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994). "And an omission is significant only if it is prejudicial." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (citing *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997)). "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion*, 13 F.3d at 246. "Instead a claimant must set forth specific, relevant facts—such as medical evidence—that the ALJ did not consider." *Nelms*, 553 F.3d at 1098.

Jozefyk contends that the ALJ failed to adequately develop the record in this case because she failed to obtain 52 pages of significant medical records concerning his physical and mental conditions. ECF No. 11 at 12. Though it is not entirely clear from his brief, Jozefyk apparently is referring to the documents he submitted to the Appeals Council after the ALJ rendered her decision, which are marked as Exhibits 16E to 19E and 21F to 28F. R. 2–6. The ALJ's failure to obtain these records, Jozefyk contends, was prejudicial and requires reversal. ECF No. 11 at 12–14.

The Appeals Council considered this material and concluded that the information it contained did not provide a basis for changing the ALJ's decision. R. 2. In fact, the Council noted that most of the documents supplied were not new because they were copies of documents that were already part of the record. *Id.* Some of the evidence submitted by Jozefyk post dated the ALJ's decision and thus did not directly bear on Jozefyk's condition at the time of the hearing. *Id.* And ten pages consisted of third party statements, apparently from Jozefyk's mother and step-father, as well as correspondence Jozefyk authored. R. 304–12.

13

Jozefyk cannot show prejudice by pointing to medical evidence already in the record, and the ALJ cannot be faulted for failing to gather third party statements from his parents and his own correspondence. This is especially true given the fact that the regulations place the duty to submit all evidence that relates to a disability claim on the claimant. *See* 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled."). At the hearing, the ALJ specifically asked Jozefyk if the record was complete, and he said the record should include treatment notes from Dr. Powers, Dr. Kloub, and Dr. Hitch. R. 100. The ALJ then asked if there were any additional records that he needed to submit, and he responded "No, that's it." R. 101. Jozefyk then submitted records from those three providers after the hearing, which the ALJ received into the record and considered in arriving at her decision. R. 14.

For some reason, however, Jozefyk submitted only a single page of the October 21, 2014 neuropsychological evaluation report by Dr. Hitch and the first page of Dr. Kloub's October 15, 2014 report of a neurology consultation visit. R. 476, 478. He submitted the entire reports to the Appeals Council after the ALJ issued her decision. R. 505–12. The Appeals Council considered the full reports and concluded that they did not provide a basis for changing the ALJ's decision, a decision Jozefyk does not challenge. In fact, neither Dr. Hicks nor Dr. Kloub opined that Jozefyk was more restricted than the ALJ found. Dr. Hicks, who performed a neuropsychological evaluation, concluded that "[f]rom a strictly neuropsychological point of view, I would like to think that there are any number of jobs that Chris might be able to do effectively, particularly since his scores were generally in the average/low average range and since his memory looked solid and his executive functioning often looked quite respectable." R. 508.

14

In light of this opinion and given the record as a whole, including the ALJ's credibility finding, the Appeals Council's conclusion that this evidence did not provide a basis for a different result was not unreasonable. Jozefyk has failed to demonstrate that the ALJ failed to sufficiently develop the record or that he suffered prejudice.

**C. Concentration, Persistence, and Pace Limitations and the ALJ's Hypothetical**

Lastly, Jozefyk argues that the ALJ's RFC determination and hypothetical to the VE failed to adequately account for moderate limitations on his ability to maintain concentration, persistence, or pace (CPP). Under Seventh Circuit precedent, it is well-established that "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (quoting *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)). In particular, the Seventh Circuit has found fault when the ALJ translates a finding of moderate limitations in CPP into an RFC limiting the claimant to simple, routine, and repetitive tasks. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) (rejecting argument that "an ALJ may account generally for moderate limitations on concentration, persistence or pace by restricting the hypothetical to unskilled work"). But where a medical source, whose opinion the ALJ reasonably accords great weight, translates his own finding that the claimant may have moderate difficulties in CPP into an ultimate conclusion that the claimant can nevertheless perform simple, routine, and repetitive work, the ALJ does not err. Thus, in *Johansen v. Barnhart*, the court held that the ALJ did not err in finding that despite the plaintiff's moderate limitations in his ability to maintain a regular schedule and attendance, and in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms, he could still perform repetitive, low-stress work:

15

> The ALJ did not err in relying on Dr. Matkom's assessment of Johansen's mental RFC. Both Dr. Matkom and Dr. Berney found that Johansen was essentially "moderately limited" in his ability to maintain a regular schedule and attendance, and in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms. Dr. Matkom, however, went further and translated those findings into a specific RFC assessment, concluding that Johansen could still perform low-stress, repetitive work. Dr. Berney, on the other hand, did not make an RFC assessment (nor did state-agency physician Ingison). Thus, because Dr. Matkom was the only medical expert who made an RFC determination, the ALJ reasonably relied upon his opinion in formulating the hypothetical to present to Goldsmith.

314 F.3d 283, 288–89 (7th Cir. 2002).

Similarly in this case, despite the state consultative psychologists' findings that Jozefyk had moderate limitations in CPP, both Dr. Musholt and Dr. Clark concluded that he "is overall capable of less stressful, routine work that would not require frequent contact with others." R. 118–19, 155. In fact, both thought that Jozefyk's difficulties with CPP were directly related to his anxiety around other people. In describing his difficulties with social interaction, Dr. Musholt explained Jozefyk "is capable of learning, remembering and carrying out simple instructions." R. 118. He had a moderate degree of difficulty, however, in "effectively responding to supervisor [sic] & coworkers . . . due to anxiety." *Id.* It was in situations "where he had to be placed around others," Dr. Musholt opined, that "he may have moderate difficulty in maintaining A/C/P/P," *id.*, meaning attention, concentration, persistence, and pace. The ALJ reasonably captured these limitations in his RFC limiting Jozefyk to "simple and repetitive tasks requiring no contact with the public and only occasional contact with supervisors and coworkers but with neither coworkers or supervisors located in close proximity to the assigned work station, specifically no closer than 10 to 15 feet." R. 19.

Jozefyk cites *Varga v. Colvin* as support for his contention that the ALJ in this case erred in her formulation of his RFC. 794 F.3d 809 (7th Cir. 2015). In *Varga*, the ALJ found that the

16

plaintiff had moderate limitations in CPP and in various functional areas within that broader category, but then adopted an RFC that only limited her to "simple, routine, and repetitive tasks in a work environment free of fast paced production requirements." *Id.* at 811–13. Jozefyk seems to read *Varga*, and *Yurt* as well, to say that an RFC limiting a claimant to simple, routine, repetitive work is never appropriate when moderate difficulties in CPP are found. But this is not what these cases say. In *Yurt*, the court declined to adopt the blanket rule, based on the instructions in the SSA's Mental Residual Functional Capacity Assessment (MRFCA) form, that the boxes checked by the reviewing psychologist in the worksheet section of the form do not constitute the RFC assessment, which the Third Circuit had applied in *Smith v. Commissioner of Social Security*, 631 F.3d 632, 637 (3d Cir. 2010). *Yurt*, 758 F.3d at 858. But *Yurt* did not say that the worksheet observations always control over the doctor's narrative RFC assessment. And *Varga* explicitly recognized that "in some cases, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations." 794 F.3d at 816 (citing *Johansen*, 314 F.3d at 286). The problem in *Varga* was that the doctor's narrative RFC was missing. Under those circumstances, the court held that it was error not to rely on the worksheet observations. *Id.* But where the examiner's narrative is included and is not inconsistent with the worksheet findings, the ALJ may reasonably rely on it. *See Capman v. Colvin*, 617 F. App'x 575, 579 (7th Cir. 2015) ("So the ALJ may reasonably rely on the examiner's narrative in Section III, at least where it is not inconsistent with the findings in the Section I worksheet.").

Although the electronic forms used by state agency consultants for assessing Jozefyk's mental impairments in this case are not the same as those used in *Yurt* and *Varga*, the law has not changed. A claimant's RFC is "the most [the claimant] *can* still do despite [the claimant's]

17

limitations," 20 C.F.R. § 404.1545(a)(1) (emphasis added), not what he can do with ease or without moderate difficulty. This is particularly important to note when one considers what the term "moderate" is intended to mean in this context. The recent rule revisions by the SSA clarify that a "moderate" limitation means that a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." SSA, Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66164 (Sept. 26, 2016) (effective January 17, 2017). Although the revised regulations became effective after the hearing was held in this case, the definitions "are consistent with how [SSA's] adjudicators have understood and used those words in [SSA's] program since [SSA] first introduced the rating scale in 1985." 81 Fed. Reg. 66147. As a result, the definitions set forth in the new rules "do not represent a departure from prior policy." *Id.*; *see also Capman*, 617 F. App'x at 579 ("A moderate limitation is not a complete impairment." (citing *Roberson v. Astrue*, 481 F.3d 1020, 1024 (8th Cir. 2007))). Thus, moderate difficulty does not mean that the claimant is unable to perform the activity or task.

It is also important to note that where, as here, a case proceeds to a hearing, it is the responsibility of the ALJ, not the medical experts, to assess the claimant's RFC. 20 C.F.R. § 404.1546(c). Although the ALJ must consider opinions from medical sources in assessing issues such as a claimant's RFC, "the final responsibility for deciding these issues is reserved to the Commissioner." *Id.* § 404.1527(d)(2).

Here, the ALJ carefully considered the opinion of Dr. Musholt, confirmed by Dr. Clark, as to what impact Jozefyk's mental impairments would have on his functional capacity. No other medical sources offered an opinion on the issue. The RFC determined by the ALJ is consistent with the only medical opinions offered in the case. Neither Dr. Musholt, nor Dr. Clark, indicated that

18

Jozefyk was incapable of performing the full range of medium work because of his mental impairments; at most, they thought he might have moderate difficulty with certain tasks under certain circumstances. The ALJ formulated an RFC that took into consideration these difficulties by limiting him to simple and repetitive tasks with minimal direct contact with coworkers and supervisors. I find no error and substantial evidence supports the ALJ's finding.

## CONCLUSION

For the reasons state above, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED** this 5th day of March, 2018.

                                                          s/ William C. Griesbach
                                                          William C. Griesbach, Chief Judge
                                                          United States District Court